IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| REBERIANO ARROYO-SANTANA, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:14-CR-196-TWT-LTW-3 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:17-CV-1268-TWT-LTW |

**FINAL REPORT AND RECOMMENDATION**

Movant is a federal prisoner who challenges his judgment of conviction under 28 U.S.C. § 2255. (Doc. 616.)[1] The undersigned held an evidentiary hearing. (Doc. 648 (hearing transcript).) The parties filed post-hearing briefs. (Docs. 652, 656, 657.) After reviewing the record, the briefs, and the evidence presented at the hearing, the undersigned finds that Movant is not entitled to relief under § 2255.

**I.  Background**

The Court discusses here the undisputed, background facts and Movant's claims. The Court discusses its findings as to the disputed facts in Part III, below.

Movant's claim under § 2255 is that he pled guilty only because of his defense lawyer's promise that he would not be sentenced to more than ten years' imprisonment

---

[1] All citations to the record are to case number 1:14-cr-196-TWT-LTW.

– the mandatory minimum sentence for Movant's drug trafficking crime. (*Id.*) David Marshall was Movant's lawyer.

As a result of Marshall's alleged promise, Movant pled guilty pursuant to a negotiated plea agreement. (Doc. 388.) The Court sentenced Movant to twenty years' imprisonment, which was below the range of imprisonment calculated under the U.S. Sentencing Guidelines (the "Guidelines"). (Docs. 533, 570.)

Movant signed his plea agreement and pled guilty before the Honorable Thomas W. Thrash, Jr. on June 3, 2015. (Docs. 388, 388-1.) The meetings between Movant and Marshall that are relevant to the § 2255 motion occurred on that date, at the Court, and on May 19, 2015, at the Robert A. Deyton Detention Center.

Isabel Flynn was the interpreter at both meetings. An interpreter was needed because Movant speaks only Spanish and Marshall speaks only English, with very few exceptions. Like Movant, Flynn is a native of Mexico and a native Spanish speaker. Flynn is on the Court's list of approved Spanish-English interpreters for counsel's use, but has not passed the federal court interpreter certification examination. Flynn had two car accidents in July 2015, after she interpreted for Movant and Marshall in the two meetings identified above.

AO 72A
(Rev.8/82)

Movant, pro se, asserted only one claim in his § 2255 motion. (Docs. 616, 630.) That claim is that Marshall "rendered ineffective assistance of counsel by inducing [him] to plead guilty with misrepresentations regarding the amount of time he would receive" in prison. (Doc. 616 at 6.) Movant claimed in his motion, and his sworn declaration attached to it, that Marshall promised him his prison sentence would not exceed ten years if he executed the plea agreement, based on Marshall's discussions with Judge Thrash and Respondent's counsel. (*Id.* at 10, 12, 19-20.) Movant claimed that Marshall also told him to agree with what Judge Thrash said at the plea hearing and not to tell Judge Thrash of Marshall's promise. (*Id.* at 12-13, 20.)

Movant swore the following in his declaration:

Prior to Mr. Marshall's May . . . 2015 visit, I made my mind to go to trial and present a duress defense. It is what Mr. Marshall said that . . . changed my mind to plea out. If I knew that there was a slightest possibility that I can get more than 10 years, I would have rejected the deal and proceeded to trial.

(*Id.* at 20; *see id.* at 13-14.) Movant claimed that he would have presented a duress defense at trial, namely that he was forced, under threat of harm or death to him and his family, to work for the Mexican drug trafficking organization. (*Id.* at 14-16, 20-23.) In his § 2255 motion and accompanying declaration, Movant described in detail the facts underlying his duress defense. (*Id.*)

3

In the brief he submitted through counsel after the evidentiary hearing, Movant raised a second claim for relief that he contends "is intertwined with, and naturally arises out of, his pro se allegations" in his § 2255 motion. (Doc. 652 at 24 n.4.) Movant labeled that claim as an ineffective assistance claim, namely that Marshall's "advice about his plea and plea proceedings was incorrect and confusing, such that he was denied the effective assistance of counsel for this additional reason." (*Id.* at 23-24.) But rather than arguing the elements of an ineffective assistance claim – deficient performance and prejudice – Movant argued the elements of a claim challenging the validity of a guilty plea – that the plea was not knowing and voluntary. (*Id.* at 23-27.) Movant claimed that he "was confused about the proceedings and the consequences of his guilty plea, rendering his plea involuntary and invalid."[2] (*Id.* at 4.)

The Court finds that claim, whether asserting ineffective assistance of counsel or directly challenging the validity of Movant's guilty plea, is new. The § 2255 motion, liberally construed, does not contain a claim that Movant pled guilty because he was confused about the plea proceedings, confused by Marshall's advice, or did not

---

[2] Movant may have couched this claim under the veil of ineffective assistance of counsel to avoid a procedural default in the event that he did not assert on direct appeal that his guilty plea was not knowing and voluntary. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.").

4

understand the consequences of his plea. In fact, Movant claimed that Marshall's advice was clear and he knew exactly what to do based on that advice: plead guilty by answering Judge Thrash's questions in the manner Marshall instructed him and he would receive a prison sentence of ten years or less. Movant claimed that Marshall's advice was false and misleading, not that he did not understand it. Movant claimed he pled guilty as a result of inducement, not confusion.

Movant never moved to amend his § 2255 motion – either before or after the evidentiary hearing, pro se or through counsel – to add this new claim that his guilty plea is invalid because of confusion. The claim is thus not properly before the Court and will not be considered. And in any event, as explained below, Movant has not shown that Marshall rendered ineffective assistance. *See infra* Part III.

## II.  Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. "To obtain collateral relief, a [movant]

5

must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that her lawyer took or would have failed to take the action she contends the lawyer should have taken. *Id.* at 1315. The U.S. Supreme Court repeatedly has reminded courts to faithfully apply the "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013).

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a

6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III. Factual Findings And Analysis

At the evidentiary hearing, Marshall disagreed with Movant's claims that Marshall promised a particular sentence if Movant pled guilty and told Movant to be less than truthful at the plea hearing. Marshall testified that he knew Movant wanted a ten-year prison sentence, but he advised Movant of the Guidelines range and sentencing exposure and that Movant "was nowhere near [receiving] a mandatory minimum of the ten years." (Doc. 648 at 18, 21, 43-44.) Marshall testified that he "never" told Movant he would receive a sentence of ten years or promised any sentence; he said Movant's contrary claim is "absolutely wrong." (*Id.* at 19, 21.)

Marshall's testimony on those issues is credible, both because he explained why he would never assure, much less promise, a defendant a particular sentence in a federal case and because Flynn's testimony corroborated Marshall's. Marshall accurately described the differences between plea negotiations and sentencing in state

7

and federal courts. (*Id.* at 19-21.) As Marshall put it, "you never know in the federal context whether you're assured of anything until you get in front of the district judge." (*Id.* at 20.) Marshall's explanation for why he did not make any promises to Movant was logical, reasonable, and credible.

Flynn testified that she did not recall Marshall ever promising a certain sentence to Movant or telling Movant to answer questions at the plea hearing with anything other than the truth. (*Id.* at 58-61, 73-74.) Flynn testified that "of course, [she] would" remember if Marshall had done either of those things because she knows from her years of experience in federal criminal cases that such statements would be inappropriate and contrary to the criminal justice system. (*Id.* at 60.) And ensuring, through her interpretation, that a lawyer's client understands a proposed plea agreement and that the lawyer adequately explains it is something Flynn "personally take[s] . . . very, very seriously." (*Id.* at 74.)

Flynn further testified that she was confident Movant understood her interpretation in the two meetings with Marshall. (*Id.* at 77-78.) Flynn explained how she develops a rapport and mutual dialogue with clients, particularly fellow Mexicans like Movant, to assure that understanding. (*Id.*) Finally, Flynn testified that the car accidents she had after the two meetings at issue did not prevent her from recalling the

8

details of those meetings. (*Id.* at 80.) After observing Flynn at the hearing and reviewing her testimony in conjunction with all the other evidence, the Court finds that Flynn was sufficiently able to recall the pertinent events.

The Court credits Marshall's and Flynn's testimony and finds that Marshall did not promise or assure Movant of any particular sentence or tell Movant not to be truthful in response to any questions at the plea hearing. The Court finds that Marshall accurately advised Movant of his sentencing exposure and adequately explained the proposed plea agreement to him.

The Court makes those findings not only on the basis of Marshall's and Flynn's credible testimony, but also because of the numerous discrepancies in Movant's testimony. There are discrepancies between Movant's statements in his § 2255 filings – the motion and his sworn declaration – and his testimony at the hearing, as well as discrepancies in his testimony at various points during the hearing. Those discrepancies significantly undermine Movant's claims.

Movant stated in his § 2255 filings that Marshall promised a ten-year prison sentence at the May 2015 meeting at the detention facility, but testified at the hearing that Marshall promised a ten to fourteen year prison sentence at the June 2015 meeting at the Court. (*Compare* Doc. 616 at 12-13, 19-20 *with* Doc. 648 at 102-07, 127.)

Movant stated in his § 2255 filings that he told Marshall before pleading guilty that he wanted to go to trial, (doc. 616 at 13), but unequivocally testified at the hearing that he "wouldn't have gone to trial because one way or another I knew I was guilty" and he "knew [he] was going to plead guilty," (doc. 648 at 109, 112). And after unequivocally testifying that he was not going to trial, Movant changed his story again and suggested that he would have stood trial if he knew he faced a possible sentence of life imprisonment (which, of course, was the maximum possible prison sentence). (*Id.* at 112-13.) That too contradicts what Movant stated in his sworn statement accompanying his § 2255 motion, which was that he "would have rejected the [plea] deal and proceeded to trial" if he knew "there was a slightest possibility" that he faced a prison sentence of more than just 10 years. (Doc. 616 at 20.)

Movant's description in his § 2255 filings of the facts underlying his duress defense also differed from his description of those facts at the hearing. The testimony differed as to the number of people who kidnaped Movant, the amount of the ransom he was ordered to pay, whether he was beaten during his detention in Mexico, whether his abductors were armed, whether an abductor accompanied him at all times in the United States, and whether Mexican police beat him. (*Compare* Doc. 616 at 20-22 *with* Doc. 648 at 128-31.)

10

Movant characterized all those discrepancies as simply mistakes made by the Turkish inmate who drafted his § 2255 filings. The Turkish inmate does not speak Spanish, so a Mexican inmate interpreted Movant's statements to the Turkish inmate. (Doc. 648 at 105, 133.)

Movant was asked three times at the hearing about the preparation of the § 2255 filings. Movant first testified that the Mexican inmate read those filings to Movant, in Spanish, after they were completed. (*Id.*) Later in the hearing, Movant again testified that the Mexican inmate read the filings to him in Spanish before he signed them and that everything in the filings was true. (*Id.* at 126.)

But when he then was confronted with all the discrepancies between his testimony and the § 2255 filings, Movant changed course and testified that the filings were not read to him after completion and before he signed them. (*Id.* at 132-33.) That final version of events allowed Movant to claim that the discrepancies were merely mistakes because "maybe the interpreter didn't understand me." (*Id.* at 132.)

Movant thus says, on the one hand, that his § 2255 filings present an important, fact-intensive claim of ineffective assistance of counsel but, on the other hand, he did not find it important enough to know what facts were written in those filings. And now, Movant says that the inconsistent statements should not be held against him

11

because "he never had the opportunity or ability to have someone read the [§ 2255] petition in Spanish for him prior to or after their submission to the Court." (Doc. 657 at 10.)

Movant never testified at the hearing that he was denied the opportunity, or otherwise was unable, to have the § 2255 filings read to him in Spanish. There is no evidence of that. Movant testified (ultimately) that he chose to sign the filings without having them read to him, not that the Mexican inmate – who obviously interpreted Movant's statements so the Turkish inmate could draft the filings – would not read the completed filings to Movant. (Doc. 648 at 132-33.)

In short, Movant's testimony was not credible. The Court finds from all the evidence that Marshall did not promise Movant any sentence or engage in any of the

12

wrongdoing of which Movant accused him.³ Movant thus has not shown deficient performance, which is one of the elements of his ineffective assistance claim.

Nor has Movant shown prejudice, which is the other element. "[I]t is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010). "[I]n order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (quotation marks omitted). "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

---

³ Movant did not present any evidence of a motive for Marshall to falsely tell Movant he would get a certain sentence if he pled guilty. There is no evidence that Marshall had any reason to do that or any reason to want Movant to plead guilty. It is undisputed that Marshall knew "from a very early stage" in the case, based on his discussions with Respondent's counsel, that Movant "was facing potentially the high end of any kind of sentences compared to" co-defendants because of his role in the drug trafficking organization. (Doc. 648 at 46.) Why, then, would Marshall, a veteran criminal defense lawyer who has practiced in this Court for fourteen years, lie to procure a guilty plea when he knew the lie would be promptly exposed at sentencing? Movant does not say.

13

As discussed above, Movant testified at the hearing that he "wouldn't have gone to trial." (Doc. 648 at 109.) Movant testified: "I knew I was going to plead guilty" because "I knew I was guilty." (*Id.* at 109-12.) When asked if he would have pled guilty if he knew he could be sentenced to life imprisonment, Movant replied "if I was going to get a life sentence, I would have been better off just to go to trial." (*Id.* at 113.) Even there, Movant did not testify that he would have gone to trial, only that it would have been better to do so if he knew he would receive – not merely faced – a life sentence. Movant knew from the plea agreement that a life sentence was possible. (Doc. 388-1 at 3.)

The Court finds from the evidence that there is not a reasonable probability that Movant would have stood trial but for Marshall's alleged false promises. Movant has not shown prejudice.

## IV. Certificate Of Appealability ("COA")

A federal prisoner may not appeal the denial of her § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here. Movant has not shown that he received ineffective assistance of counsel. Based on the evidence presented at the hearing on Movant's § 2255 motion, that conclusion is not reasonably debatable.

## V. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate under 28 U.S.C. § 2255 [616] and a certificate of appealability be **DENIED** and that case number 1:17-cv-1268-TWT-LTW be **DISMISSED**.

**SO RECOMMENDED** this 24 day of July, 2018.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE